# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON L. COMSTOCK,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>LELAND DUDEK,[1]<br>Commissioner of the Social<br>Security Administration,<br><br>　　　　Defendant. | Case No.  2:24-cv-01481-VBF (SK)<br><br>**CORRECTED REPORT AND RECOMMENDATION TO REVERSE AND REMAND COMMISSIONER'S DECISION** |

## I.
## INTRODUCTION

This <u>Corrected</u> Report and Recommendation is submitted to the Honorable Valerie Baker Fairbank, United States Senior District Judge, under 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.[2] Plaintiff Jason L. Comstock seeks review of the Commissioner's final decision denying his application for disability insurance benefits. (ECF 1). Among other claims, Plaintiff contends that the administrative law judge ("ALJ") failed to give sufficient reasons to reject plaintiff's subjective symptom testimony about his mental

---

[1] Leland Dudek, the current Commissioner, is substituted as Defendant for former Acting Commissioner Martin O'Malley.  42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] This Corrected Report and Recommendation is issued solely to correct minor typographical errors; no material substantive changes have been made.  Thus, its filing does not trigger another period for objections or extend the one that lapsed on March 20, 2025.

impairments. (ECF 9 at 17–19). For the reasons below, the Commissioner's decision should be reversed, and this matter remanded for further proceedings.

## II.
## BACKGROUND

In January 2017, plaintiff applied for disability insurance benefits, alleging disability as of December 2016 due to his back impairment, depression, anxiety, and post-traumatic stress disorder ("PTSD"). (Administrative Record ("AR") 32, 119, 179, 239–40). His application was denied. (AR 179–83). After an administrative hearing in February 2019, the ALJ issued a decision denying benefits. (AR 29–47, 187–88). At step two of the five-step sequential evaluation for determining disability,[3] the ALJ found that plaintiff's back impairment was "severe," but his mental impairments were "non-severe." (AR 35–38). The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work with no mental limitations. (AR 38). The Appeals Council then denied review, and plaintiff appealed to this court. (AR 6–9, 1050–51). In May 2021, this court found that the ALJ had failed to provide a legally sufficient basis to find that plaintiff's mental impairments were not severe and remanded for further proceedings. (AR 1052–64).

After a second hearing before a different ALJ, plaintiff's application was denied again in October 2023. (AR 986–1008). The ALJ found that, through the date last insured on December 16, 2016, plaintiff retained the RFC to perform a reduced range of light work with some physical and mental

---

[3] The ALJ assesses disability for Social Security purposes using a five-step evaluation process, which examines (1) whether the claimant engaged in substantial gainful activity; (2) whether the claimant's impairment is severe; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can do his or her past relevant work; and (5) whether the claimant can do any other work. *See Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

2

limitations. (AR 994–99). Specifically relating to plaintiff's mental impairments, the ALJ determined that plaintiff "can perform simple and routine tasks; he can make simple work-related decisions; he can occasionally manage changes in the workplace; he can occasionally make decisions; and he can have occasional contact with supervisors, coworkers, and the general public." (AR 994). The ALJ also found that while he could no longer perform his past relevant work as a power plant operator, plaintiff could perform other work, including the jobs of assembler of small products, inspector, hand packager, and marker. (AR 999–1001). After the Appeals Council denied review, this action followed.

## III.
## DISCUSSION

This court reviews the Commissioner's decision to determine whether it is free of legal error and supported by substantial evidence. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). When determining whether substantial evidence supports the ALJ's findings, the court must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *See Ahearn v. Saul*, 988 F.3d 1111, 1115–16 (9th Cir. 2021).

Plaintiff contends that the ALJ failed to articulate legally sufficient reasons for rejecting his subjective symptom testimony about his mental impairments. (ECF 9 at 17–19). In evaluating the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step inquiry. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

"Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler*, 775 F.3d at 1102 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 2001)).

    At the first step here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 995). At the second step, however, the ALJ found that plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*). The ALJ gave the following reasons for discounting plaintiff's testimony: (1) the objective medical record did not support plaintiff's alleged symptoms; (2) the degree of plaintiff's subjective complaints was not comparable to his generally routine and conservative treatment regimen; and (3) plaintiff's ability to engage in daily activities contradicted his subjective symptoms. (AR 996–97). None of these was a clear and convincing reason supported by substantial evidence.

    First, the ALJ found that plaintiff's subjective symptoms were inconsistent with the "benign" findings of the mental status examinations. (AR 997). In doing so, however, the ALJ cited isolated pieces of evidence as support while giving no indication that she had considered the medical record as a whole. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). While the ALJ highlighted some examinations that were largely within normal limits and seemingly exhibited mild findings, she ignored probative medical evidence supporting plaintiff's subjective allegations. For example, the ALJ overlooked well-documented evidence that plaintiff regularly sought treatment for symptoms related to his PTSD and

depression. (AR 99, 638). She also disregarded evidence that during mental status examinations, plaintiff was often described as disheveled and poorly groomed, presenting with low mood, passive suicidal thoughts, quiet speech, and restricted affect. (*See, e.g.,* AR 99, 604, 634, 638, 644, 646–40, 656, 669–70, 689–90, 717–18, 897–98, 913–16, 925, 957–58).

In short, the ALJ cherry-picked evidence of unremarkable mental examination findings from specific months and ignored (or glossed over) the medical evidence supporting plaintiff's testimony of his mental health symptoms over a sustained period of impairment. *See Ghanim*, 763 F.3d at 1164. Accordingly, the ALJ erred by concluding that a few periods of temporary well-being and improvement in mental health symptoms undermined plaintiff's longstanding subjective symptoms. *See, e.g., Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) ("[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment."); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1200–01 (9th Cir. 2008) ("Nor are the references in [a doctor's] notes that Ryan's anxiety and depression were 'improving' sufficient to undermine the repeated diagnosis of those conditions, or [another doctor's] more detailed report.").

Second, the ALJ found that plaintiff's "treatment regimen was generally routine and conservative." (AR 997). Although the ALJ seemingly recognized that plaintiff had been taking medication, she failed to consider the antipsychotic medications plaintiff were prescribed—Seroquel, Lithium, and Risperidone. (AR 99, 604, 634, 638, 644, 646–49, 656, 669–70, 689–90, 717–18, 915, 925, 957–58). These medications cannot be facially described as conservative treatment. *See, e.g., James N. v. Saul*, 2019 WL 3500332, at *6 (C.D. Cal. July 31, 2019) (Risperidone does not qualify as routine or conservative treatment); *Johnson v. Colvin*, 2014 WL 2586886, at

\*5 (C.D. Cal. Mar. 18, 2014) ("Seroquel connotes mental health treatment which is not 'conservative,' within the meaning of social security jurisprudence."); *Quiroz v. Berryhill*, 2018 WL 922130, at \*7 (C.D. Cal. Feb. 14, 2018) (Lithium prescription connotes serious mental health treatment).

Third, the ALJ relied on plaintiff's daily activities—exercise, walking daily, driving a car and motorcycle, limited social interactions, completing household chores, watching television, and shopping or running errands, among other activities (AR 996)—to reject his subjective symptom testimony. Daily activities may be "grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal citations omitted). But "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1049–50 (9th Cir. 2001). Nor was there any attempt by the ALJ to explain the transferability of these activities to plaintiff's ability to work a full-time job. *See Orn*, 495 F.3d at 639. Plaintiff's ability to shop for groceries, watch television, or sparingly engage in social activity does not necessarily undermine the believability of his symptom testimony or establish that he engages in work-related skills on a regular basis. *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). Thus, the ALJ's conclusion that Plaintiff's daily activities are "transferable" to the workplace was unsupported by substantial evidence. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Finally, the ALJ's errors in discounting plaintiff's subjective symptom testimony were not "inconsequential to the ultimate nondisability

determination." *Treichler*, 775 F.3d at 1099.  If the ALJ had properly credited plaintiff's testimony, perhaps the ALJ either would have found that plaintiff was disabled or arrived at an RFC that properly accounted for the symptoms associated with his mental impairments.

## IV.
## CONCLUSION

For all these reasons, the Court recommends that the ALJ's decision be reversed and this case remanded for further proceedings.  Because remand is recommended, plaintiff's other claims need not be addressed.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012).

DATED:   March 21, 2025  

STEVE KIM
United States Magistrate Judge